UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:                                )
                                      )
   Catherine H. Nalls,                )   Case No. 06-01291-TOM-13
                                      )
                    Debtor.           )

ORDER DENYING MOTION TO MODIFY PLAN

This matter came before the Court for hearing on March 29, 2007 on the Debtor's Motion to Modify Plan & Extend Length of Plan & Order for Stay Against Foreclosure (the "Motion to Modify") (doc. no. 67) and the Trustee's Objection to the Motion to Modify (the "Objection") (doc. no. 71). This Court has jurisdiction under 28 U.S.C. § 1334(b). Appearing at the hearing were the Debtor, counsel for the Debtor, counsel for AMC Mortgage Services, Inc., and the Trustee. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has considered the pleadings and the law and finds and concludes as follows[1].

FINDINGS OF FACT

The Debtor filed a chapter 13 petition on April 20, 2006. Contemporaneous with the filing of the petition, the Debtor filed a Motion to Extend Stay (doc. no. 3) and a chapter 13 plan (doc. no. 2). In the Motion to Extend Stay, the Debtor alleged that she had one prior case, case no. 00-01739, filed on March 20, 2000 and dismissed on April 14, 2000. In actuality, the Debtor had five prior cases. Three of the five prior cases were joint cases. The first case, case no. 93-04446, was filed as a joint case on June 29, 1993 and was dismissed on March 19, 1997. The

---

[1]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

1

second case, case no. 98-07557, was filed on November 19, 1998 and dismissed on June 29, 1999. The third case, case no. 99-04373, was filed on July 27, 1999 and dismissed on March 8, 2000. The fourth case, case no. 00-01739, was filed as a joint case and is the only case cited in the Motion to Extend Stay. The fifth case, case no. 00-02508, was filed as a joint case on April 25, 2000 and dismissed on April 9, 2002. The Debtor did not receive a discharge in any of the prior cases, all ended in dismissal. At the hearing on the Motion to Extend Stay on April 20, 2006, appearances were made by the Debtor, counsel for the Debtor and the Trustee. While this is the Debtor's sixth case, the Motion to Extend Stay was not properly before the Court because Section 362(c) is applicable only when a prior case was dismissed within one year of the new petition date. The case immediately prior to the current case was dismissed in 2000, well outside the one year window. Based on this, Debtor's counsel withdrew the Motion to Extend Stay in open court.

Confirmation of the Debtor's plan was originally scheduled for July 6, 2006. At the confirmation hearing, the Court found that the plan was due to be confirmed; however, following the confirmation hearing and before an order was entered, the Debtor filed an amended chapter 13 plan (doc. no. 29) and the confirmation hearing was rescheduled for August 24, 2006. At the August 24, 2006 hearing, confirmation was continued, with the consent of the parties, to September 28, 2006 at which time the Trustee was to have received two plan payments. At the hearing on September 28, 2006, neither the Debtor nor Debtor's counsel appeared and the case was dismissed for failure to timely remit plan payments and failure to appear (doc. no. 34). The Debtor then filed a Motion to Reinstate Case (doc. no. 36), which was set for hearing on October

2

26, 2006. At the hearing on the Motion to Reinstate Case, the Court granted the motion and confirmed the plan as a 60-month case paying $640.00 monthly (doc nos. 39, 43).

Post-confirmation, on November 16, 2006, AMC Mortgage Services, Inc. (the "Creditor") filed a Motion for Relief from Stay (doc. no. 46). According to the Fact Summary Sheet (doc. no. 50), at the time the Motion for Relief from Stay was filed the Debtor was over $3,000 in arrears and had not made a single post-petition mortgage payment. Additionally, the Debtor was substantially underwater on the loan with a fair market value, according to the Schedule A, of $65,000.00 and a payoff amount of over $91,000.00 (per the Fact Summary Sheet). Of note, the Creditor was not listed on the Debtor's original Schedule D and was not added until July 19, 2006, post-original confirmation, when the Debtor amended her schedules and filed an amended plan. Why the mortgage debt was not listed as a secured debt originally is unknown to the Court.

The Motion for Relief from Stay was scheduled for hearing on December 21, 2006. At the hearing on the motion, the parties informed the Court that the matter was settled and counsel for the Creditor stated that she would submit a consent order. A consent order conditionally denying the motion for relief was entered on January 5, 2007 (the "Consent Order") (doc. no. 59). The Consent Order provides: "The Motion for Relief from Stay...is hereby conditionally denied. **However, should the Debtor fail to make any payment within thirty days from its due date beginning in January, 2007, the Motion for Relief from Stay is granted without further order of the Court**" (emphasis added). No payments were made following entry of the Consent Order and on February 5, 2007, the Creditor filed a Notice of Termination of Automatic Stay (doc. no. 66).

3

In response and in an attempt to stop the foreclosure, the Debtor filed the instant Motion to Modify. In the Motion to Modify, the Debtor requested that her current mortgage arrearage, totaling $4,125.48 for the months of January through March 2007, be included in her plan and that her plan be extended to sixty months, which is presently the number of months in the confirmed plan. The Motion to Modify also sought a stay of foreclosure[2], which was scheduled for March 26, 2007. The Trustee's Objection alleges that if the mortgage arrearage was added to the plan the Debtor would need to increase her plan payments to $665.00 a month, not the $640.00 a month as proposed in the Motion to Modify (and the current monthly payment under the confirmed plan).

At the hearing, the Trustee stated that he had not received any plan payments since January 16, 2007 and, because of that, the Trustee amended his Objection and stated that the plan payments would need to increase to $735.00 a month to pay out the case in the remaining time period if the arrearage was added into the plan. The Debtor testified at the hearing that she had a partial payment of $490.00 that she could tender but she was not sure if she would be able to begin her payments in April if the Motion to Modify was granted. The Debtor admitted that she had not made her monthly mortgage payments for the months of January thru March 2007. She stated that she had fallen behind because she had not been working but that she was now caring for her sister and being paid $200 per week for this. The Court is confused as to this statement since the Debtor listed no employment information on her Schedule I. Her income, as

---

[2] Technically, this type of relief is injunctive relief, which should have been brought by adversary proceeding and not by motion. Fed. R. Bankr. P. 7001. However, the court will treat this request as a motion to alter, amend or set aside that part of the Consent Order entered January 5, 2007 that allowed future relief from stay.

4

Case 06-01291-TOM13   Doc 74   Filed 04/03/07   Entered 04/03/07 13:22:27   Desc Main
Document      Page 4 of 9

discussed above, was from social security, regular income from a business (what business is unknown) and family support. It is possible that the family support had been suspended or the business income may have fallen off but the Court cannot determine that from the record. The Debtor testified that with this additional income, the family support, which is substantially the same amount she alleged she was already receiving when the case was filed, she would be able to make her plan payments and pay her mortgage. She asked the court to stay the foreclosure, allow her to cure the arrearage and save her house. Counsel for the Creditor pointed out that the mortgage was signed on September 29, 2005, a mere seven months before the Debtor filed for bankruptcy, and the last mortgage payment made to the Creditor was made in March 2006.

CONCLUSIONS OF LAW

A confirmed chapter 13 plan may be modified at any time before the completion of the payments under the plan on the request of the debtor. 11 U.S.C. § 1329(a). Such a modification is permissible where changed circumstances exist which were unforseen at the time of confirmation. Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle), 12 F.3d 1008 (11th Cir. 1994. Any post-confirmation modification must also comply with the requirements outlined in 11 U.S.C. §§ 1322, 1323 and 1325(a). 11 U.S.C. § 1329(b). Of particular importance in post-confirmation modifications of plans to include additional arrearage on a principal residence mortgage are the requirements of § 1322(b)(5) that a cure of such default must be within a reasonable time and that the regular payments be maintained. Id. at 1011. Additionally, the debtor must show that the modification is proposed in good faith and that the debtor will be able to make payments under the modified plan and comply with all of its terms. 11 U.S.C. §§ 1329 and 1325(a)(6).

5

Accordingly, the Debtor here must have shown that: (1) the default on her mortgage was caused by unforseen circumstances, (2) the default can be cured within a reasonable time while regular payments are maintained, (3) the modified plan is proposed in good faith, and (4) the modified plan is feasible.  The Debtor testified that she missed her mortgage payments because she had been out of work.  This Court believes that, given her history of bankruptcy and the fact that her main source of income relied on the goodwill of her family, this is not an unforseen circumstance.  The Debtor also testified that she had $460.00 to tender to the Trustee and that then she would try to resume her monthly mortgage payments and monthly payments to the Trustee in April.  She asked that the arrearage, over $4,000.00, be placed into the plan and cured over the life of the plan. This Court has allowed other debtors to cure their arrearage over the life of the plan and would be inclined to grant this Debtor the same latitude, had she met the other requirements for modification.  There was no evidence regarding good faith but, on the issue of feasibility, the Trustee asserted that it would take $735.00 per month to make the plan work.  The Court finds this proposal unfeasible.  The Debtor has been unable to make her $640.00 monthly plan payments, the last payment made was on January 16, 2007, and she has been likewise unable to make her monthly mortgage payments.  Even with her new income, the $800.00 per month she claims she will receive from caring for her sister, it is not feasible for the Debtor to pay $735.00 to the Trustee and pay her regular mortgage payment, which is $800.97.  There was no evidence that the Debtor had any other source of income; however, the Court notes that the Debtor's Schedule I lists $500.00 month in regular income from an operation of business, $635.00 a month in social security income and $807 a month from family support.  The Court understands that the family support may have been temporarily suspended but has now

6

Case 06-01291-TOM13    Doc 74    Filed 04/03/07    Entered 04/03/07 13:22:27    Desc Main
Document      Page 6 of 9

resumed and finds that the total monthly income, if the Debtor is still receiving income from a business and social security, is $1,935. Even assuming this is correct, the Court finds that a monthly payment of $1,535.97 is not feasible based on Debtor's Schedule J of expenses (as amended on July 19, 2006), which reflects expenses for food, utilities, and other basic necessities in the amount of $451.00 (disposable income is listed at $684.00 per month which is not sufficient to pay the $735.00 per month it would take to pay out the plan). Further, the Court notes that the expenses listed on the Amended Schedule J are unrealistically low and appear to be incomplete-no amount is shown for home maintenance, clothing, medical or prescription expenses, or transportation (i.e. gas for the vehicle, a 2000 Ford Expedition, which was in the plan and to be paid through the Trustee). The Motion to Modify is due to be denied based on the lack of feasibility of the proposed, modified plan.

The other problem with the Motion to Modify is that the Debtor is also in effect asking the Court to set aside or alter that portion of the January 5, 2007 Consent Order which provided that the Creditor would be granted relief from the stay automatically upon any future default. This Court has consistently denied actions to alter, amend or set aside consent orders because the Court is reluctant to unravel what was entered into consensually by the parties who were represented by counsel. The setting aside of consent orders has long been frowned upon by all courts. Justice Cardozo, in United States v. Swift & Co., 286 U.S. 106 (1932) stated:

> No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering from hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforseen conditions should lead us to change what was decreed after years of litigation and with the consent of all parties.

7

Case 06-01291-TOM13    Doc 74    Filed 04/03/07    Entered 04/03/07 13:22:27    Desc Main
Document      Page 7 of 9

When the parties entered into the Consent Order, both sides contemplated that it was possible that the Debtor would again fall behind on her mortgage payments as a conditional remedy was provided for if that happened. Both parties, at that time, felt that what was fair in the event that default occurred was for the stay to terminate. Although the exact circumstances, her alleged unemployment, that led to default may not have been anticipated, it is just one of a number of conceivable sets of circumstances which the Debtor and her counsel could and should have foreseen as possibilities, especially given her history with this Court.

While the Court is not unsympathetic to the Debtor's situation, no sufficient evidence has been presented and the Court cannot find that a "grievous wrong" has occurred. In fact, it appears that the Debtor has been living in a home that she is unable to afford and for eighteen months has only been able to pay the Creditor a total of three monthly mortgage payments pre-petition and nothing post-petition (some small distribution from the Trustee to the Creditor has occurred; however, the Debtor is over $3,000.00 behind in payments to the Trustee which has affected distributions to all creditors). To date, the Creditor has received a total of three pre-petition mortgage payments and NO post-petition mortgage payments. The Debtor agreed that the stay would be lifted if she again defaulted on this relatively recent mortgage. As a consequence, the Creditor agreed to forgo pursuing its Motion for Relief from Stay. The present fact situation is unfortunate but is not outside what was contemplated or should have been contemplated by the parties at the time the agreement was made. Accordingly, the Court will not set aside or alter the Consent Order. The stay terminated as a result of the Debtor's default. The Creditor has the right to proceed to foreclosure under the Consent Order. Accordingly, the Debtor's Motion to Modify is due to be denied. Therefore, it is hereby

8

**ORDERED, ADJUDGED AND DECREED** that the Trustee's Reply is **SUSTAINED**; and it is further,

**ORDERED, ADJUDGED AND DECREED** that the Motion to Modify is **DENIED**.

Dated this the 2nd day of April, 2007.

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge